Robert E. **CURTIS**, Plaintiff, Appellee,

v.

Al **NOEL**, et al., Defendants, Appellants.

No. 89–1139.

United States Court of Appeals, First Circuit.

Heard May 1, 1989.

Decided June 21, 1989.

Rehearing and Rehearing En Banc Denied July 26, 1989.

---

Richard W. Benka, with whom, Paul V. Lyons, Joseph Halpern and Foley, Hoag & Eliot were on brief, for defendants, appellants.

John N. Lewis, with whom Ravech, Aronson & Shuman, P.C., was on brief, for plaintiff, appellee.

Before BOWNES and BREYER, Circuit Judges, and GRAY,* Senior District Judge.

GRAY, Senior District Judge.

This is an appeal from a summary judgment granted by the district court to the plaintiff, which required the defendant administrator of a retirement plan to recalculate upward the retirement benefits to which the plaintiff was entitled. We reverse.

The plaintiff, Robert E. Curtis, was employed in Massachusetts by Patriot General Life Insurance Company from 1968 until his retirement in 1981, and he was its chief executive officer until 1976. In 1972, the board of directors of Patriot General, of which the plaintiff was a member, voted that the plaintiff would receive, in addition to his annual salary of $35,000, "incentive compensation" in the amount of two percent of the insurance premiums paid to the company. These additional compensation payments were to be made throughout the balance of the plaintiff's employment and for five years after his retirement.

At the time that this new basis for compensation of Mr. Curtis was adopted, a statute of Massachusetts provided that:

"No domestic [insurance] company ... shall make any agreement with any of its officers, trustees or employees whereby it agrees that for any services rendered or to be rendered he shall receive any salary, compensation or emolument that will extend beyond a period of three years from the date of such agreement; provided, however, that the payment of an amount not in excess of twelve and one half per cent of such annual salary, compensation or emolument, or a larger percentage if approved by the commissioner [of insurance], may by contract be deferred beyond such period; ..."

Mass.G.L. c. 175, § 35.

In 1974, the Sentry Group acquired the stock of Patriot General, and Mr. Curtis became eligible for the Sentry Insurance Employee Retirement Plan. In due course, officials of the company concluded that the Curtis compensation agreement was illegal because the provisions for payment were to extend beyond three years, the increase above regular salary was not limited to twelve and one half per cent, and the approval of the commissioner had not been obtained. This determination of illegality resulted in a new agreement between Mr. Curtis and the Sentry Group, under which Mr. Curtis retained his office as president of Patriot General and was accorded a sala-

---

* Of the Central District of California, sitting by designation.

ry of $35,000 without the additional "incentive compensation."

Mr. Curtis retired, effective January 1, 1982, and the administrator of the Sentry Insurance Employee Retirement Plan, Mr. Al Noel, a defendant in this action, undertook to determine the retirement compensation to which Mr. Curtis was entitled. Under the Sentry Plan, the amount of benefits is set by reference to the three highest consecutive earnings of the employee's last ten years of employment.

During the years 1972, 1973 and 1974, when the "incentive compensation" was in effect, the plaintiff's employment earnings were $56,740.57, $71,845.48 and $77,981.21, respectively, which were the highest compensation years during the ten year period. However, the administrator of the Plan declined to use those years in calculating the plaintiff's benefits because of what he concluded to be the illegal nature of the plan from which the compensation stemmed. Instead, he computed the plaintiff's retirement benefits on the earnings received in 1975, 1976 and 1977, which were $50,409.96, $46,363.98 and $46,363.98, respectively.

Mr. Curtis requested the higher benefits; the Plan representatives denied the request; and this litigation followed.

In the proceedings before the district court, the administrator relied upon a provision in the Sentry Plan that defines "annual earnings" as: "an employee's total compensation as reported by the Company or participating Company for Federal income tax purposes (W–2 earnings), but exclusive of:

a. any special remuneration which would not ordinarily be considered compensation for job-related services ..."
Record Appendix at 173.

The administrator took the position that the special remuneration at issue had been paid illegally and, therefore, could not "ordinarily be considered compensation for job-related services."

In granting summary judgment for the plaintiff, the district court found that "[t]he interpretation of the Sentry Plan as to the plaintiff's retirement benefits was an isolated one, without precedent or prior notice, and whose only proffered rationale was not in furtherance of any legitimate Plan purpose." He therefore ruled that the exclusion of the "allegedly" improper compensation payment had been arbitrary and unreasonable and directed that the administrator retroactively "recalculate the plaintiff's retirement benefits on the basis of compensation paid in 1972, 1973 and 1974 including the payments referred to as 'incentive compensation,' ..."

We are unable to agree with the district court. In *Firestone Tire & Rubber Co. v. Bruch*, 488 U.S. ——, ——, 109 S.Ct. 948, 952, 103 L.Ed.2d 80 (1989), the Supreme Court said that in actions pursuant to 29 U.S.C. § 1132(a)(1)(B), under which this case was brought, "[t]rust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers.... A trustee may be given power to construe disputed or doubtful terms, and in such instances the trustee's interpretation will not be disturbed if reasonable." The Sentry Plan provides that the administrator, among many other responsibilities, shall determine "which Employees are eligible to participate in the Plan," and shall "provide all parties dealing with the Plan an interpretation of Plan provisions on request." We believe that it clearly is within the discretionary authority of the administrator to conclude that illegal payments are not and should not "ordinarily be considered compensation for job-related services ..." within the meaning of the Plan.

In addition to being supportable as a matter of interpreting the formal wording of the Plan, we believe that the administrator's decision is in accord with principles of trust law. The scheme that gave to the plaintiff the incentive compensation was, as the district judge said, "almost certainly in violation of Mass.G.L. c. 175, § 35." In other words, the increased payments that formed the three highest years of compensation were illegal. Principles of trust law demand that a trustee not pay retirement benefits to an employee that are based upon illegal contributions. This doctrine is well illustrated by the case of *Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106 (9th Cir.1976). There, the employee, in anticipation of re-

tirement, had made an illegal contribution to the pension fund in an effort to heal a "break" in his employment. The opinion of the court of appeals said, "We agree with the district court that it was illegal for the Pension Fund to receive the retroactive contribution in an attempt to heal the break in service. It would likewise be illegal for the Fund to pay benefits to Thurber based upon the illegal retroactive contribution." The administrator here, like the trustees in *Thurber*, "has the obligation to guard the assets of the trust from improper claims...." *LeFebre v. Westinghouse Electric Corp.*, 747 F.2d 197, 207 (4th Cir. 1984).

A trustee or administrator also has the obligation to deal with all beneficiaries in an even-handed manner. If the administrator here were to accord increased benefits to the plaintiff as a result of the "incentive compensation" scheme, it would constitute discrimination against the employees whose retirement benefits were not illegally enhanced.

For the foregoing reasons, we conclude that the defendant administrator was fully justified in his interpretation of the Plan and the allocation of benefits to the plaintiff. Accordingly, the judgment of the district court is reversed and the case remanded with instructions to render judgment for the defendant.