Josephine RING, Plaintiff,

v.

CONFEDERATION LIFE INSURANCE COMPANY, Defendant.

Civ. A. No. 90–11003–S.

United States District Court,
D. Massachusetts.

Nov. 21, 1990.

Marc S. Alpert, Law Office of Marc S. Alpert, Boston, Mass., for plaintiff.

John J. Weltman, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for defendant.

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SKINNER, District Judge.

The plaintiff Ms. Ring was employed by The Stop & Shop Companies—Bradlees as a camera operator for the advertising department. She injured her back while working on March 4, 1985. She has not returned to work. Ms. Ring submitted a claim for long-term disability benefits with

defendant Confederation Life. She received benefits through April 21, 1988. On that date, Confederation Life sent her a letter terminating her benefits because she was no longer totally disabled. The letter indicated that Bradlees had offered her a job as an accounts payable clerk, that two physicians had advised them that this position was consistent with her physical capabilities, and that total disability requires the inability to perform the material and substantial duties of any occupation for which the employee is qualified by education, training, or experience. Lastly, the letter advised that Ms. Ring could have the denial of benefits reviewed and any questions answered by Confederation Life by writing to them within sixty days of receipt of the letter.

Ms. Ring is suing for long-term disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B). Confederation Life moves for summary judgment on two grounds: Ms. Ring's alleged failure to exhaust administrative remedies bars this suit; and no question of material fact exists as to the denial of benefits.

*Exhaustion of Administrative Procedures*

ERISA provides in § 1133(2) that a plan "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." Several courts of appeals, including the First Circuit, have interpreted this requirement as not only imposing a duty on the plan to allow review, but also requiring the participants to use it prior to filing suit in federal court. *Drinkwater v. Metropolitan Life Insurance Co.*, 846 F.2d 821, 825 (1st Cir.1988), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). Despite a dissent by Justices White and Brennan to the denial of *certiorari*, the Supreme Court has refused to address the issue. *Mason v. Continental Group, Inc.*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986) (denying *certiorari*). In this circuit, a plaintiff bringing an action under § 1132(a)(1)(B) must exhaust administrative procedures,

unless "the administrative route is futile or the remedy inadequate." *Drinkwater*, 846 F.2d at 826 (citations omitted).

The long-term disability policy provides that

[i]f a claim is not paid in full, Confederation Life will furnish notice to the claimant which will specify the reason or describe the additional information required to perfect the claim. Upon written request by the claimant within 60 days after notice is received, Confederation Life will review the claim in question and give a final written decision on the review within 60 days (or 120 days under special circumstances) after such request is received.

(Gale Aff., Ex. 1, p. 15)

■ Ms. Ring's claim was not paid on April 21, 1988 and she was notified by letter dated on April 21, 1988 that she was no longer totally disabled and that she could have her denial of benefits reviewed by submitting a written request within sixty days. Plaintiff submitted a letter received by defendant on June 20 or 21 requesting a review. Consequently, Ms. Ring fulfilled the administrative procedures after the first notification.

■ Defendant's administrative exhaustion argument in its brief stems from a second notification by letter dated February 17, 1989. This letter states that Confederation Life had investigated the claim further, but had received no further information beyond the myelogram, which was submitted by plaintiff. It also stated that Ms. Ring had not forwarded copies of her medical records from Milton Hospital. The letter concluded that their decision would remain as previously stated and that if Ms. Ring would like to submit additional medical information, they "would be happy to review it." (Gaff Aff., Ex. 10) The defendant asserts that after the denial in February 1989, Ms. Ring never filed a request for review.

Under the policy, Ms. Ring was not required to request a review after the second notification. Even if the second notification were deemed to mark the decision from which Ms. Ring was required to re-

quest a review, the letter of February 17, 1989 did not adequately notify Ms. Ring of the requirement. *See De Pina v. General Dynamics Corp.*, 674 F.Supp. 46 (D.Mass. 1987). Ms. Ring has exhausted all required administrative procedures and has permissibly brought suit in federal court.

*Question of Material Fact*

■ The defendant asserts that under the standard of review for § 1132(a)(1)(B) actions, no material question of fact exists. The standard of review to be applied in these cases was addressed by the Supreme Court in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Recently, the First Circuit quoted the holding and interpreted *Firestone:*

> When squarely presented with the question, the Court swept aside the myriad of artificial distinctions and mapped a less deferential approach [than the arbitrary and capricious standard], holding that "for the purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator is operating under a possible or actual conflict of interest."

*Burnham v. Guardian Life Insurance Co.*, 873 F.2d 486 (1st Cir.1989) (citation omitted).

The *Burnham* ruling, however, does not address the exception that the Supreme Court created earlier in the opinion. In *Firestone*, the Court ruled that the arbitrary and capricious standard is to be applied when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 109 S.Ct. at 956. In applying the term "discretionary authority", the Court looked to trust principles. Under trust principles, "[w]hether 'the exercise of power is permissive or mandatory depends upon the terms of the trust.'" 109 S.Ct. at 954 (quoting 3 W. Frachter, *Scott on Trusts* § 187, p. 14 (4th ed. 1988)). In the case before it, the Court found that

Firestone can seek no shelter in these principles of trust law, however, for there is no evidence that under Firestone's termination pay plan the administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference.

109 S.Ct. at 954 (citations omitted).

The Eleventh Circuit, subsequently, has applied this discretionary authority exception in *Jett v. Blue Cross and Blue Shield*, 890 F.2d 1137 (11th Cir.1989). Unlike the *Firestone* Court, the Eleventh Circuit found discretionary authority in a plan that provided:

> As a condition precedent to coverage, it is agreed that whenever the Claims Administrator makes reasonable determinations in the administration of the [plan] such determination shall be final and conclusive.

890 F.2d at 1139.

Confederation Life asserts that it had discretionary authority in determining eligibility for benefits. Ms. Ring's benefits were denied under the policy because "the employee cease[d] to be totally disabled...." (Gale Aff., Ex. 1, p. 16) To demonstrate discretionary authority, Confederation Life points to parallel sections that terminate benefits. Those sections specify that benefits will be terminated when "Confederation Life *deems* [that] the employee has failed to furnish proof of the continuance of such total disability", when "the employee is not under continuing medical supervision and treatment *considered* satisfactory by Confederation Life", or when the "employee is not working at rehabilitative employment ... which is *considered* appropriate and has been *approved* or *recommended* by Confederation Life." Additionally, "[t]he Policyholder agrees to administer the Policy in *accordance with the instructions furnished* by Confederation Life." (Gale Aff., Ex. 1, pp. 11, 16, 21) (emphasis added)

These parallel sections do not create the broad discretionary authority over the determination of total disability as found in *Jett.* The plan does not provide that these determinations should be given deference.

If this plan were found to convey discretionary authority, the vast majority of ERISA claims would be brought under the arbitrary and capricious standard, contrary to *Firestone*. The general rule as announced in *Burnham* would be swallowed by the exception allowing plan administrators to contract out of *de novo* review. Ms. Ring's claim under § 1132(a)(1)(B) is subject to *de novo* review.

■ The party moving for summary judgment must affirmatively demonstrate the absence of a genuine issue of material fact. The opponent, on the other hand, "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Confederation Life has submitted the opinions of several physicians asserting that Ms. Ring is not totally disabled. Ms. Ring has submitted opposing opinions by a physician and a vocational therapist. Under *de novo* review, these differing physical assessments create a question of fact as to whether Ms. Ring could perform the requirements of an accounts payable clerk.

Accordingly, defendant's motion for summary judgment is denied.