Alfred P. REEVES, Plaintiff,

v.

CONTINENTAL EQUITIES CORP. OF AMERICA, and Continental Corp., Defendants.

No. 89 Civ. 4438 (KTD).

United States District Court, S.D. New York.

March 14, 1991.

Eikenberry Futterman & Schoolman, New York City (Stanley Futterman, of counsel), for plaintiff.

Vedder, Price, Kaufman, Kammholz & Day, New York City (Marc S. Wenger, of counsel), for defendants.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Alfred P. Reeves originally filed this action on June 23, 1989, asserting five claims for: (1) wrongful discharge under the federal securities laws; (2) wrongful discharge in breach of an alleged implied contract of employment; (3) severance benefits under New York law; (4) severance benefits accrued under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"); and (5) unreimbursed business expenses under New York law. Defendants Continental Equities Corporation of America, and Continental Corporation ("Continental") were granted summary judgment on the first and fourth claims, arising under federal law, and the remaining claims were dismissed for lack of pendent jurisdiction. The Second Circuit affirmed the dismissal of the first claim based on lack of standing to assert federal securities law violations.[1] It vacated and remanded for further findings claims brought under the purview of ERISA, because a determination was made that issues of fact existed which were to be resolved pertaining to the reasons why Reeves was discharged from Continental's employ. No mention was made by the Second Circuit regarding the pendent state claims. *Reeves v. Continental Equities Corp.*, 912 F.2d 37 (2d Cir.1990).

On October 5, 1990, Reeves served an Amended Complaint claiming: (1) wrongful discharge under the federal securities laws; (2) severance benefits accrued pursuant to ERISA;[2] (3) wrongful discharge in breach of an employment contract under New

---

1. Reeves' first cause of action reinstates claims arising under the Federal Securities laws even though the Second Circuit affirmed my dismissal of those very claims. Therefore, that cause of action is subject to summary dismissal without further explanation at this juncture.

2. Reeves is dropping the state law contract claim for severance benefits which is no longer necessary now that an ERISA claim has been reinstated.

York law; (4) defamation;[3] and (5) unreimbursed business expenses. Additionally, Reeves makes a demand for a jury trial and requests punitive or exemplary damages as to all claims. Continental now moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Reeves' third, fourth and fifth claims for failure to state a claim upon which relief may be granted. In the alternative Continental seeks dismissal of Reeves' three state law claims on the ground that the factual assertions therein are unrelated to the sole remaining federally based claim for relief, i.e. ERISA, and thus no basis for the exercise of pendent jurisdiction exists. Additionally, Continental moves for an order pursuant to Fed.R.Civ.P. 12(f), striking: (1) Reeves' jury demand as to his second claim; (2) his claim for punitive or exemplary damages as to his second and third claims; and (3) his entire first claim based on the Second Circuit's partial affirmance. Additionally, Continental seeks an order granting reasonable attorney's fees and costs incurred in connection with this motion.

## STATEMENT OF FACTS

Continental is a registered broker-dealer under the Securities and Exchange Act of 1934, 15 U.S.C. § 78*o* (b)(8) ("1934 Act"). At all times relevant to this action, Continental was the principal underwriter, manager and distributor of the Continental Asset Management Funds ("the Funds"), which encompassed five mutual funds. Continental Equities was established as a new venture within the financial services group of Continental Corporation to accomplish the development of new investment products and distribution systems. Amended Complaint ¶¶ 6–8.

Reeves was hired in May of 1985 as Vice President of Compliance & Finance of Continental Equities. He was to act as the Chief Compliance Officer. Amended Complaint ¶ 10. It was his stated responsibility to assure that each day's business was properly recorded in the books and records of Continental Equities before the beginning of the next day's business. Reeves was also responsible for assuring that Continental adhered to and complied with all federal and state securities regulations. In addition, he had to be prepared on any given day to deal with a surprise audit by securities examiners from the Securities and Exchange Commission ("SEC"), National Association of Securities Dealers ("NASD"), or a state jurisdiction.

In August 1987, the SEC began an audit of Continental's mutual funds. At a hearing before the SEC, Reeves was questioned about possible illegal insider trading by officers and directors of the funds. Reeves was also questioned about Continental's practice of designating certain travel, lodging, and entertainment costs as marketing expenses charged to the funds, as permitted under SEC regulation. Amended Complaint ¶¶ 15–17. By letter, Reeves subsequently informed three directors of Continental that it may have committed violations of securities regulations, and that as Chief Compliance Officer, it was incumbent upon him to investigate areas of Continental's business to determine if any violations of securities regulations had occurred. Amended Complaint ¶¶ 19–21. In his letter, citing a conflict of interest, Reeves resigned his post as the Chief Financial Officer of the funds, although he remained in Continental's employ. In a second letter to the directors, Reeves stated that "there may be violations associated with the running of sales incentive programs during 1987, and I am commencing a review of the procedures and the practices that were followed." Amended Complaint ¶¶ 22–26.

Reeves was then summoned to a meeting with the chief of security, a member of the audit department of Continental's parent corporation, and an outside attorney who had represented Continental during the SEC investigation. Amended Complaint ¶ 27. At the meeting, Reeves was confronted with evidence that, in 1987, he had submitted two reimbursement claims with Continental for a single airline trip. Amended Complaint 29. Reeves was immediately suspended. Amended Complaint ¶ 30. An investigation ensued whereby it

---

**3.** The claim for defamation is made for the first time in the Amended Complaint.

was found that Reeves had not engaged in any wrongdoing per se. Nonetheless, on June 29, 1988 Reeves was asked to resign. Amended Complaint ¶ 33. Upon refusing to resign, he was immediately discharged.

On August 1, 1988, Reeves requested a hearing on the denial to him of unemployment insurance benefits. A hearing was held before Administrative Law Judge Keal Kaufman on October 5, 1988 at which time Peter Noble, an official of Continental's Human Resources Department, testified. Judge Kaufman reversed the denial of unemployment insurance benefits, finding that Reeves had not engaged in misconduct. No appeal was taken from that ruling. Amended Complaint, ¶¶ 33, 36–37.

## DISCUSSION

### I. *Breach of Contract*

■ Reeves claims that although he was employed at-will, Continental had a termination policy set forth in an employee manual which stated the grounds for which an employee may be subject to dismissal. According to Reeves, that manual created an implied contract of employment because it assured continued employment as long as an employee did not transgress the manual's provisions. Reeves maintains that Continental breached that implied contract because it did not fire Reeves for any of the stated grounds as contained in the employee manual. Reeves thus claims that the termination policy in the employee manual precludes Continental from terminating him, even though he was an employee at-will, because he was fired for no apparent or stated reason or cause.

Under New York law, an at-will employee, "not engaged for a fixed term of employment," can have a "cause of action for breach of [an implied] contract against his employer" where he is discharged in the absence of the circumstances or the procedures specified in the employer's personnel handbook. *Weiner v. McGraw–Hill Inc.*, 57 N.Y.2d 458, 460, 457 N.Y.S.2d 193, 194, 443 N.E.2d 441, 443 (1982); *see also Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 334, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 921 (1987) (employer has right to terminate

at-will employee at any time for any reason or for no reason, *unless limited by express agreement*) (emphasis supplied). Continental concedes that Reeves satisfied all the elements of the state cause of action but one, namely, Continental avers that the provisions of the Manual upon which Reeves relies are not sufficiently "express" to sanction a finding of wrongful discharge of an at-will employee. At this juncture of the case, where all allegations of the complaint are deemed true, I must disagree.

The manual upon which Reeves relies, in pertinent part, states:

INVOLUNTARY TERMINATION—Employees are subject to termination for unsatisfactory performance, excessive absenteeism, or misconduct based upon the corresponding standards of Job Performance, Absenteeism, and Conduct. The Standards detail the prior warnings and documentation which are appropriate before termination is effective. Serious misconduct violations and unsatisfactory job performance due to inability to perform the job may result in bypassing corrective action steps . . .

Amended Complaint, Exh. C.

Reeves claims that the language of this manual is sufficient to state a present state cause of action for wrongful discharge where employment is otherwise at will. In addition, Reeves alleges that he received neither a written warning nor probationary period, as provided in the manual, and that prior to his summary suspension, he had received nothing but praise. Specifically, Reeves alleges that he:

was aware of the Manual before and during his employment with defendant Continental Equities and relied upon what he understood to be its provisions regarding security of employment in resigning from his immediately previous position of employment [as chief financial officer] and in accepting and continuing his employment with defendant Continental Equities until the time of his suspension and termination.

Amended Complaint ¶ 57. Furthermore, Reeves' decision to initiate a compliance

investigation of Continental's sales practices and prepare the required report for which he alleges he was fired does not appear to constitute grounds for discharge, according to the manual. Indeed, Administrative Law Judge Kaufman made a similar finding, that there was no misconduct that preceded Reeves' firing. As such, a question of fact remains as to whether Continental breached an implied contract with Reeves, who may have relied on Continental's employment manual to justify his accepting continued employment with Continental. Reeves has stated a common law claim for wrongful discharge sufficient to overcome summary dismissal at this point.

## II. *Defamation*

Following Reeves' discharge from Continental's employ, it is alleged that Continental spoke privately to prospective employers of Reeves, informing them that Reeves "was discharged for misconduct ... indicat[ing] that [he] lost his job under circumstances reflecting poorly upon him in his trade or profession," and that as a result, he has been unable to obtain regular full-time employment in the securities industry. Amended Complaint ¶¶ 68–73.

■ Charges of libel and slander were formerly considered as vexatious in this circuit. Litigation for defamation was discouraged by a requirement that such contentions be set forth in considerable detail. Currently, the federal rules do not require such special pleading. Fed.R.Civ.P. 8; *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir.1980). Accordingly, plaintiff's charges must be set forth in the form of a short concise statement detailing only that which is necessary to enable the defendant to respond. *Geisler v. Petrocelli*, 616 F.2d at 640. Under Rule 8(e)(1), the standards for sufficiency of the pleadings are liberal. *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir.1986) ("test for complaint's sufficiency is whether it is detailed and informative enough to enable defendant to respond"). Continental avers that Reeves fails to meet the very liberal pleading requirements to make out a claim for defamation. I agree.

■ Reeves' sole allegation states that:

defendants have told prospective employers of plaintiff or their agents that plaintiff was discharged for misconduct, as defendants alleged to the New York State Department of Labor, or have otherwise indicated that plaintiff lost his job under circumstances reflecting poorly upon him in his trade or profession.

Amended Complaint ¶ 68.

While it is true that Reeves identifies the statements made to the New York State Department of Labor with the amount of specificity that his limited knowledge of those statements permits, he inadequately identifies when the statements were made. In addition, the statements specify neither who made the comments nor to whom they were made. On a motion for summary dismissal, the issue of sufficiency of a defamation claim is "not whether the court regards the language as libelous, but whether it is reasonably susceptible of such a construction. The court may not ... interfere with the jury's role by treating as nondefamatory a statement that a reasonable juror may fairly read in context as defamatory.'" *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir.1986) (quoting *Sharon v. Time, Inc.*, 575 F.Supp. 1162, 1165 (S.D.N.Y.1983)). A reasonable juror in this case would not, in all fairness, be enabled to determine that Continental's statements of Reeves' misconduct in context were defamatory. Nor is there sufficient information contained in Reeves' Amended Complaint for Continental to adequately prepare a defamation defense.

Continental further argues that the dates that it allegedly defamed Reeves, as they appeared in the pleadings, were not stated with sufficient particularity to determine whether a claim for defamation was timely commenced under New York's one year statute of limitations. *See* New York Civ. Prac.Law & R. 215(3). I too have serious concerns as to whether the defamation claim was timely commenced. As such, this claim is not sufficiently particular to withstand a motion to dismiss at this juncture.

### III. *Striking Demands for Jury Trial and Punitive Damages*

■ Continental requests that Reeves' jury demand should be stricken for it relates to his claim for severance benefits under ERISA and, by the great weight of precedent, there is no right to a jury trial in an action for benefits under ERISA.

While the Second Circuit has held that no jury trial is permitted in an action by pension fund participants against the fund's trustees for breach of fiduciary duty under § 502 of ERISA, the court never discussed whether ERISA provides for a jury trial in an action for benefits. *Katsaros v. Cody*, 744 F.2d 270, 278–79 (2d Cir.), *cert. denied sub nom., Cody v. Donovan*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). Moreover, the district courts of this circuit are split in terms of denying a jury trial in ERISA cases. Generally, where the claim is more equitable than legal, a jury demand is denied.

The cases for which a trial by jury was denied have typically consisted of claims for violations of fiduciary duties, for an accounting or other equitable claims. These claims have historically not been tried by juries. *See Nobile v. Pension Comm. of Pension Plan for Employees of New Rochelle Hosp.*, 611 F.Supp. 725 (S.D.N.Y.1985) (jury trial denied for claim brought pursuant to ERISA §§ 1021, 1022, 1024(b) for failure to disclose or furnish plaintiff with proper information); *Gardella v. Mutual Life Ins. Co.*, 707 F.Supp. 627 (D.Conn.1988) (claim for recovery of benefits due to breach of fiduciary duty is not analogous to legal action for breach of contract but rather to action by a beneficiary against trustee under law of trusts which is viewed as equitable in nature).

However, a claim for damages for nonpayment of benefits is essentially legal in nature and therefore plaintiff is entitled to a jury trial. *Abbarno v. Carborundum Co.*, 682 F.Supp. 179, 181–82 (W.D.N.Y. 1988); *see also, Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F.Supp. 882 (S.D.N.Y. 1990) (although ERISA makes no express provision for jury trials, Congress implies a right to a jury trial arising in purely contractual cases from fact-oriented issues.) The issue in this case is somewhat clouded. It is unclear whether Reeves' plea for benefits arises purely out of a contract theory or whether Continental breached some fiduciary duty to Reeves while he was in Continental's employ. In the interest of justice and judicial economy, this question can easily be deferred until such time as further discovery is conducted on this issue. Moreover, it is common for courts to try both equitable and legal issues in one proceeding, reserving some for determination at the bench and others for the jury.

■ Similarly, punitive damages may be available in an action for severance benefits under § 502 of ERISA, 29 U.S.C. 1132, for the Supreme Court has not yet decided whether punitive damages may be recovered. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144 and n. 12, 105 S.Ct. 3085, 3091 and n. 12, 87 L.Ed.2d 96 (1985) (no punitive damages may be recovered in an action against a plan fiduciary under ERISA's § 409, 29 U.S.C. § 1109.) The question of whether punitive damages will be permitted in this case will abide to a later date.

■ Reeves' claim for punitive damages is stricken with respect to his Third Claim, however, because under New York law, punitive damages may not be awarded in breach of contract actions. *Garrity v. Lyle Stuart Inc.*, 40 N.Y.2d 354, 358, 386 N.Y.S.2d 831, 833, 353 N.E.2d 793, 795 (1976). Although Reeves alleges that Continental's breach of employment agreement was willful and malicious, New York courts require a showing of a "fraud 'aimed at the public generally', evincing a 'high degree of moral turpitude,' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Durham Indus. Inc. v. North River Ins. Co.*, 673 F.2d 37, 41 (2d Cir.) (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 491, 179 N.E.2d 497, 500 (1961)), *cert. denied*, 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982). Reeves' theory of breach of an implied contract arising from the language in an employment manual wholly fails to meet this exacting standard.

Finally, Continental asks that paragraphs 38–42 of the Amended Complaint be stricken on the ground that these allegations are immaterial since claims arising under the Federal Securities Laws were dismissed by this court and that decision was later affirmed by the Second Circuit. These allegations, however, are not wholly immaterial to the issues remaining in the case and as such they withstand this motion to strike.

Pendent jurisdiction will be exercised over Reeves' state law claims. The state claims at bar derive from a common nucleus of operative fact and would ordinarily be tried in the same proceeding. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (test for determining whether state claims are pendent to federal ones is whether there is a common nucleus of operative fact and likelihood that the state claims would be entertained in same proceeding as the federal claims). Moreover, it is within the sound discretion of the court to permit plaintiff's state claims to be tried in one forum. *Perez v. Ortiz,* 849 F.2d 793, 798 (2d Cir.1988). Thus, Reeves' state claims are sufficiently related to be tried in one case before me.

For the foregoing reasons, Continental's motion is granted in part and denied in part. The First cause of action is hereby dismissed in its entirety. The Fourth cause of action for defamation is dismissed as well. The Second, or ERISA, cause of action survives and all remaining state causes of action, except for the Fourth, survive as pendent thereto. In addition, Reeves' demand for a jury trial on the claim for severance benefits survives at this juncture but Continental will be allowed leave, after sufficient discovery is conducted on the issue, to renew its motion to strike a jury trial with regard to ERISA. Reeves' demand for punitive damages is stricken as to his Third cause of action only. Continental may renew the motion to strike the demand for punitive damages at a later stage in the proceedings. Para-

graphs 38–42 of the Amended Complaint survive as well.

SO ORDERED.